868 So.2d 155 (2004)
Earl J. FRANZ
v.
FIRST BANK SYSTEM, INC., St. Paul Fire & Marine Insurance Company, Real Estate Management Corporation, Schindler Elevator Corporation, d/b/a Schindler Enterprises, and Westinghouse Electric Corporation.
Vernon Christoff and Gilda Christoff
v.
First Bank System, Inc., Schindler Elevator Corporation, d/b/a Schindler Enterprises, Real Estate Management Corporation, Westinghouse Electric Corporation, Constitution State Insurance Company, and Travelers Insurance Company.
No. 2003-CA-0448, 2003-CA-1470.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 2004.
*157 Leonard J. Cline, Jr., Thomas G. Robbins, Metairie, LA, for Plaintiff/Appellee.
Christopher J. Aubert, Tracy E. Gold, Aubert & Christensen, L.L.C., Covington, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR., and Judge DAVID S. GORBATY).
DENNIS R. BAGNERIS, SR., Judge.
Plaintiff, Earl J. Franz ("Plaintiff") brought this action against First Bank Systems, Inc., St. Paul Fire & Marine Insurance Company, Real Estate Management Corporation, and Schindler Elevator Company (collectively referred to as "Defendants"), for injuries and damages he allegedly sustained in an elevator. After a *158 bench trial,[1] the trial court found that Plaintiff did in fact suffer a significant impact as a result of the elevator's abrupt stop and entered judgment in favor of Plaintiff. Defendants appeal this final judgment. Plaintiff answered the appeal, urging that the judgment be modified to increase the amount of damages awarded. For the reasons discussed below, we affirm the decision of the trial court.

FACTS
Plaintiff filed this suit on March 6, 1996 to recover damages for personal injuries allegedly suffered by him on March 10, 1995, when an elevator, located at the Jefferson Bank Building on Causeway Boulevard in Metairie, Louisiana, malfunctioned and abruptly stopped.[2] Partway through the trial, Defendants admitted liability for the accident, and proceeded to trial on the issues of causation and damages.
The record contains the following facts regarding the accident itself.

Plaintiff's Testimony
Plaintiff testified at trial that on March 10, 1995, he, along with two other couples, entered an elevator on the seventh floor of the Jefferson Bank building in Metairie, Louisiana, when "all of a sudden it seemed like the elevator was falling and it came to a hard, sudden, abrupt stop, and everybody in the elevator fell." Plaintiff testified that he fell to his knees, and hit his shoulder, left elbow, and the left side of his head. Plaintiff testified that the elevator fell approximately two floors, and that he and the other two couples had to remain in the elevator for approximately thirty to forty-five minutes until they could be pried out.

Mr. Vernon Christoff's Testimony
Mr. Christoff testified that he was riding the elevator with Plaintiff at the time the elevator malfunctioned. Specifically, Mr. Christoff testified that he, along with his wife, Plaintiff, and another couple, got on the elevator on the seventh floor. Mr. Christoff testified that after the button was pushed to go down to floor No. 1, and after the elevator doors closed, "the elevator just dropped tremendously." He further testified that the elevator "came to a sudden stop with a hard, hard jolt." Mr. Christoff testified that he, along with the other passengers, were trapped in the elevator for twenty-five to thirty minutes, and that a man pried the door of the elevator open with a crowbar.

Mrs. Giova Christoff's Testimony
Mrs. Christoff testified that she was on the elevator with Plaintiff at the time the elevator stopped. Specifically, she testified that after Plaintiff pressed the button for the elevator to go down to floor No. 1, the elevator "went down and it made a real hard stop all of a sudden." Mrs. Christoff further testified that after the elevator initially stopped, the elevator was "jerking and making little noises like it was about to move again...." She testified that she was stuck in the elevator for about twenty minutes, and that a crowbar was used to open the elevator doors. Mrs. Christoff testified that it "was a very frightening experience" and that she "didn't know what was going to go on, what was going to happen once it stopped...."
The evidence regarding Plaintiffs injuries is as follows.

*159 Plaintiff's Testimony

Plaintiff testified that following the accident he experienced pain in his lower back and neck, and his left arm and head. Plaintiff testified that after he got out of the elevator, he told either the manager or assistant manager of the building that he had hurt his back and neck. Plaintiff testified that on the day of the accident, he sought medical attention for his injuries at East Jefferson Hospital; however, after waiting an hour and a half in the emergency room, he got tired of waiting and went home. Plaintiff testified that he returned to the emergency room on April 4, 1995 with complaints of lower back, neck and head pain. Thereafter, Plaintiff testified that he received treatment from both Dr. Stewart Altman and Dr. John Watermeier for his neck and back pain.

Dr. Stewart Altman's Testimony
Dr. Stewart Altman, an expert in general medicine, testified by deposition. Dr. Altman testified that he treated Plaintiff from April 6, 1995 to October 30, 1995, for back and neck pain. Dr. Altman's physical examination revealed that Plaintiff's movements were stiff, and that Plaintiff would sit leaning to the right on the chair. Plaintiff's cervical spine exam showed spasm in the trapezius muscles, and his dorsal and lumbar spine exam showed spasm in the lumbosacral area with a range of motion of the back that was no greater than 20 to 30 percent of normal. Dr. Altman's diagnosis was that Plaintiff had a "cervical spine sprain, trapezius muscle sprain, lumbosacral sprain, left elbow contusion, vertigo and headaches, pre-existing, worsened by present accident." Dr. Altman prescribed physical therapy, a cervical collar, a back brace, and pain medication for Plaintiff. In June 1995, Dr. Altman referred Plaintiff to an orthopedist. Thereafter, Dr. Altman ordered a cervical and lumbar MRI because of the persistent neck and back symptoms with suggestions of nerve root compression. Dr. Altman further testified that based on Plaintiff's past medical records, he related Plaintiff's neck injuries as a new injury to the elevator accident in March of 1995 and the low back injuries as an aggravation of a pre-existing degenerative condition.

Dr. John Watermeier's Testimony
Dr. John Watermeier, an expert orthopedist, testified that he treated Plaintiff from July 1995 through December 1999. The results of Dr. Watermeier's first physical examination of Plaintiff are as follows: Plaintiff had a fifty percent range of motion in his neck in flexion and rotation; moderate facet joint tenderness; mild to moderate pain on axial compression, indicating a possible nerve impingement; limitation of motion in the lower back, with his current bending, extension, and rotation only about twenty five to thirty percent normal; pain in straight leg raising test, both sitting and lying down, with pain referred into the lower back. The neck x-rays revealed generalized mild to moderate arthritis consistent with his age and activity level, with no evidence of recent fractures or acute injuries. The low back x-rays showed a narrowing of the L5-S1 disc level, which is consistent with arthritis in his low back. Dr. Watermeier testified that based on his history and his physical exam and x-rays, it was his opinion that Plaintiff had symptoms consistent with both a cervical and lumbar disc herniation with a nerve root impingement. Dr. Watermeier testified that he treated Plaintiff by prescribing physical therapy, injections for pain relief,[3] and pain medication. Further, *160 in October 1999, Dr. Watermeier recommended that Plaintiff have surgery for his low back and leg. Specifically, Dr. Watermeier recommended that Plaintiff have an anterior lumbar decompression fusion operation, which he testified would cost between $40,000.00-$50,000.00. In spite of Plaintiff's previous neck and back injuries and pain, Dr. Watermeier testified that the cause of Plaintiff's symptoms was the elevator accident.
Dr. Watermeier reviewed the June 1995 MRI reports of Plaintiff's neck and low back. Dr. Watermeier testified that the MRI report of the neck and low back showed that the disc at L5-S1 has lost its water content and is bulging slightly in the back. Dr. Watermeier further testified that L4-5 appeared to be a bulge of the disc.
Dr. Watermeier also reviewed the MRI of Plaintiff's cervical spine. Dr. Watermeier testified that in the back of the vertebra at C3-4, there's a blackening of the disc and a bulge of the disc. Dr. Watermeier testified that this represents either a bulging disc or a bone spur or a combination of the two. Dr. Watermeier further testified that Plaintiff had a bulging disk at level C5-C6. Dr. Watermeier testified that these disk abnormalities are all part of the aging process of the human body and that this arthritic condition preexisted the trauma from the elevator accident.
Dr. Watermeier testified an electromyogram ("EMG") was performed on Plaintiff on August 2, 1995. The Plaintiff tested positive on the EMG, which meant that Plaintiff had in fact suffered some nerve injury. Thus, Dr. Watermeier testified that "in addition to his [Plaintiff's] disc abnormalities that we saw on the MRI, he [Plaintiff] had some nerve injury which I felt was secondary to his [Plaintiff's] vertebral or spinal abnormality." Dr. Watermeier related Plaintiff's nerve injury to the elevator accident of March 10, 1995.

Dr. Jonathon J. Rynning
Dr. Rynning, a psychiatrist, testified that he examined Plaintiff on September 18, 1996 for depression. Dr. Rynning testified that he believed Plaintiff had pre-existing clinical depression before the elevator accident, and that the elevator accident exacerbated the depression. Dr. Rynning diagnosed Plaintiff with depression and chronic pain.
At the conclusion of the trial, the trial court found in favor of Plaintiff, and awarded damages totaling $301,838.00, broken down as follows:

1. Past and future medical $ 76,838.00
2. Past and future physical pain and suffering $200,000.00
3. Past and future mental anguish and distress $ 25,000.00

Defendants filed this appeal, urging six assignments of error. Specifically, Defendants allege the trial court erred when it: (1) found that Plaintiff's alleged ongoing back and neck injuries were causally related to the March 10, 1995 elevator incident; (2) found that Plaintiff's alleged ongoing psychiatric injuries were causally related to the March 10, 1995 elevator incident; (3) failed to admit into evidence the videotape surveillance of Plaintiff; (4) failed to admit into evidence the videotaped recreation of the elevator incident; (5) awarded excessive general damages to Plaintiff; and (6) denied Defendants a fair and expeditious trial.
Plaintiff, by way of his answer to the appeal, requests to have the November 4, *161 2002 judgment modified to increase the amount of damages and specials as follows: (1) additur of $50,000.00 for the cost of a required anterior cervical fusion operation; (2) additur of $200,000.00 to the general damage award of $200,000.00 for two future surgeries; (3) additur of $50,000.00 to general damage award for permanent future disabilities from the two additional surgeries; (4) additur for a past lost wage award to $133,467.00; (5) additur for future loss of earning capacity award to $162,174.00; and (6) additur of $125,000.00 to the $25,000.00 award for past and future mental anguish and distress.
Issue One: Whether the trial court committed reversible error when it found that Plaintiff's alleged ongoing neck and back injuries were causally related to the March 10, 1995 elevator incident.
At the outset, we address Defendants assertion that Plaintiff's testimony lacked credibility, thereby casting doubt on Plaintiff's version of the elevator incident and his claim that he injured his back and neck therein. Defendants insist that the trial court should have found Plaintiff's testimony to lack credibility, and was clearly wrong in finding that the elevator incident caused Plaintiff any injury. Apparently, Defendants seek to have this court find that the Plaintiff's testimony was so incredible that the trial court could not have believed that the Plaintiff did in fact suffer injuries as a result of the elevator incident.
In support of this assertion, Defendants rely on the fact that Plaintiff testified at trial that when he was freed from the elevator, he was suffering from severe back pain, neck pain, headaches, a "hickey" on his left arm, and a "hickey" on his head with swelling, whereas Ms. Karen Mitchell, the Senior Property Manager for Real Estate Management at Jefferson Bank Building, testified that she was present at the elevator when Plaintiff was extricated from it, and that she did not observe any outward manifestation of any injury, and that Plaintiff did not tell her that he was injured. Defendants also rely on (1) Ms. Jan Franz's[4] testimony that she did not observe any cuts, bruises, marks, "hickeys", or swelling on Plaintiff the day of the accident, and (2) the fact that Plaintiff declined medical attention at the scene. Further evidence of the alleged lack of credibility, Defendants insist, is Plaintiff's failure to disclose to his treating physicians that Dr. V.J. Zeringue had treated him prior to the accident for neck and back pain.
After considering all of the evidence, the trial court ruled that the Plaintiff, as well as all of the passengers in the elevator at the time of the accident, suffered a significant impact as a result of the abrupt stop. The trial court also found that even though Plaintiff had in fact received treatment for neck and lower back pain for some years prior to the elevator accident, "the testimony of Dr. Altman, Dr. Watermeier, the diagnostic testing and the objective signs of injury [indicate] the [P]laintiff sustained multiple injuries and abnormalities to both the cervical (C3-4, C4-5 and C5-6) and lumbar (L4-5 and L5-S1) discs as a result of the elevator accident of March 10, 1995." The trial court specifically stated in its reasons for judgment that it had "considered all prior and subsequent medical treatment in reaching this conclusion." In other words, the trial court refused to find that the discrepancies in Plaintiff's testimony, coupled with Plaintiff's failure to mention his prior treatment to his physicians, rendered Plaintiff's entire testimony regarding the incident and his complaint of back and neck pain beyond belief.
*162 In matters of credibility, an appellate court gives great deference to the findings of the trier of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989). The trial court is in the best position to view the demeanor and mannerisms of the witnesses. Id. After reviewing the record in its entirety, we cannot say that the trial court's decision to credit Plaintiff's version of the events is manifestly erroneous, and we shall therefore defer to the trial court with respect to its finding that the elevator incident did indeed cause Plaintiff to experience back and neck pain.
Issue Two and Three: Whether the trial court erred by not admitting into evidence the videotape surveillance of Earl Franz, and the videotape recreation of the elevator incident.

The Videotape Surveillance
Defendants contend that the trial judge erred by excluding from evidence the surveillance video of Plaintiff taken on March 5 and March 8, 2001. Defendants allege that these tapes show Plaintiff lifting and moving heavy furniture, and repeatedly bending and ambulating without any apparent restrictive movement, pain or discomfort. Defendants argue that the surveillance videotapes completely contradict Plaintiff's complaints of injury, pain, and inability to work.
Admission of videotaped evidence is within the discretion of the trial court. Ibieta v. Star Casino, Inc., 98-0314, p. 8 (La.App. 4 Cir. 10/7/98) 720 So.2d 143, 147. In making its determination, the trial court should consider whether the tape accurately depicts what it purports to represent, tends to establish a relevant fact, and will aid the jury's understanding. Id. The trial court may exclude the evidence if the factors favoring admission are substantially outweighed by the factors against admission. La.C.E. arts. 401-403.
We find no abuse of the trial court's discretion in ruling the videotape to be inadmissible. The trial judge stated at trial that she did not think the "surveillance video would be of any aid to a trier of fact in this case." In making her ruling to exclude the videotape, the trial judge specifically reasoned that there was "sufficient testimony regarding his [Plaintiff's] credibility," and that "the issue is going to be the medical testimony." We agree. Accordingly, we fail to find, after our review of the record, that the trial court abused its discretion in disallowing the tapes.

The Videotape Recreation of the Elevator Incident
Defendants allege that the trial judge erred by excluding from evidence the videotape reenactment of the elevator accident. Defendants argue that the videotape reenactment reconstructed the same condition that existed at the time and location of the accident. Further, Defendants allege that the videotape clearly shows that Plaintiff is exaggerating the amount of force with which the elevator stopped on March 10, 1995.
As stated above, the admissibility of a videotape is within the discretion of the trial judge, and is determined on a case-by-case basis depending on the individual facts and circumstances of each case. Novosyolova v. Stephens, XXXX-XXXX, p. 19 (La.App. 4 Cir. 6/11/03), 850 So.2d 29, 39. In this case, the trial judge gave oral reasons for excluding the videotape reenactment. Specifically, the trial stated:
The court believed that this is of no value in ... determining what occurred to those individuals on that date. The court had problems even understanding what was going on in the tape, but once I figured out what you're attempting *163 to do, I just think that the best evidence to determine what occurred in that elevator that day is the testimony of the parties, they listen to whatever experts you have, but I think to look at this and try to make some assumption of what occurred to those individuals is an inappropriate use.
We agree. The decision to exclude this videotape reenactment was not an abuse of the trial court's great discretion in this bench trial.
Issue Four: Whether the trial court erred in awarding excessive general damages.
The Defendants contend that the $200,000.00 award to Plaintiff for past, present, and future pain and suffering, is excessive, considering the nature of his injuries. General damages cannot be fixed with pecuniary precision because they involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification, or other losses of life or lifestyle that cannot be definitively measured in monetary terms. Hanson v. Benelli, 97-1467, p. 28 (La.App. 4 Cir. 9/30/98), 719 So.2d 627, 642. In reviewing awards for general damages, this court is not to decide what it thinks would have been an appropriate award under the circumstances but rather to decide whether the award represents an appropriate exercise of discretion by the fact finder. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Each award must be analyzed on a case-by-case basis to determine whether it is adequate under the particular facts and circumstances presented by the case under review. Id. It should be noted that reasonable people will often differ on what they feel is a reasonable award for general damages. An appellate court should only raise or lower a general damages award when the award, in either direction, is beyond what a reasonable fact finder could assess for the effects of this particular injury on this particular victim under these particular circumstances. Id. With these legal precepts in mind, we now turn to the evaluation of the general damage award in the instant case.
The primary considerations in assessing damages are the severity and duration of the injured person's pain and suffering. In re Medical Review Panel Bilello, 621 So.2d 6, 9 (La.App. 4 Cir. 5/27/93). The trial court, being the fact finder, had the opportunity to hear the testimony and evidence presented. A reasonable fact finder could conclude that Plaintiff sustained disabling injuries, having long-range implications. Given the great or vast discretion accorded to the fact finders' decision on damages, we do not find that the trial court erred in awarding $200,000.00 to Plaintiff, and we therefore find no merit in this assignment of error.

ANSWER TO APPEAL
Although Plaintiff seeks to have his award for damages and specials be increased as follows:(1) additur of $50,000.00 for the cost of a required anterior cervical fusion operation; (2) additur of $200,000.00 to the general damage award of $200,000.00 for two future surgeries; (3) additur of $50,000.00 to general damage award for permanent future disabilities from the two additional surgeries; and (4) additur of $125,000.00 to the $25,000.00 award for past and future mental anguish and distress, we find no merit to his claims. Our review of the record indicates that the trial judge acted within her discretion in assessing the damages. Further, there is nothing in the record to indicate when and/or if Plaintiff will undergo the cervical disc surgery.
*164 Additionally, we find no merit to Plaintiffs argument that the trial court erred when it failed to award Plaintiff damages for past lost wages and damages for loss of earning capacity. As stated by the trial court in her reasons for judgment:
The Court finds Mr. Franz [Plaintiff] lacked credibility in his testimony relative to his past employment. Although plaintiff presented expert testimony regarding loss of earning capacity and wages, his lack of credibility diminished any value to those claims.
We agree. Accordingly, after our review of the record, we fail to find the trial court abused her discretion in declining to make an award for Plaintiff's past lost wages and loss of earning capacity.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The trial continued intermittently over a three and one half year period.
[2] This suit was consolidated with a companion case to this one, Christoff v. First Bank System, Inc., C.D.C. No. 96-1762, Div. C, Sec. 7, involving injuries to other passengers in the same elevator accident; however, the companion suit was settled prior to trial.
[3] Plaintiff received between fifty to sixty injections during his treatment with Dr. Watermeier.
[4] Ms. Jan Franz is Plaintiff's wife.