ROLAND L. BELSOME, Judge.
| ] This appeal arises from a jury verdict in favor of the plaintiff, who was injured in a motor vehicle accident. The defendants claim that the trial court erred in excluding their expert witnesses’ testimony and, further, challenge the damages award as excessive. Finding no error in the trial court’s exclusion, we amend the award of past medical expenses and affirm.

FACTS AND PROCEDURAL HISTORY

The plaintiff, Alfred Donaldson, Sr., and his son were injured in an automobile accident on August 10, 2009, when a freightliner truck driven by Loyd Dollins made an illegal right turn from the left lane and struck the plaintiffs vehicle, which was traveling in the right lane. On July 28, 2010, the plaintiff filed a personal injury lawsuit.[1] Mr. Dollins, his employer and owner of the truck, Tango Motor Transit, LLC, and Hudson Insurance Company were named as defendants in the suit.
As the suit and discovery progressed, the plaintiff filed a motion for a Daubert[2] hearing to challenge the testimony of accident-reconstructionist Jeremy Hoffpauir and orthopedic surgeon Dr. J. Monroe La-borde. After a hearing on the ^motion, the trial court excluded the testimony of both of the defendants’ experts. The defendants sought review of the trial court’s ruling; however, this court declined to exercise supervisory jurisdiction over the matter. After trial on the merits, a judgment was rendered in favor of the plaintiff in the amount of $200,000 plus judicial interest from the date of judicial demand and costs.

DISCUSSION

On appeal, the defendants claim the trial court erred by excluding their experts’ testimony.
*49 The Louisiana Code of Evidence allows a witness to qualify as an expert witness by knowledge, skill, experience, training or education. La. C.E. art. 702. The admissibility of expert testimony turns upon whether the trier of fact will be assisted in understanding the evidence or determining a fact in issue. Comment (a) to La. C.E. art. 702.
In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court established the standards for determining the admissibility of expert testimony. Daubert set forth some non-exclusive factors for courts, as the “gatekeepers,” to consider in making a determination as to whether an expert’s testimony was relevant and reliable. Those factors include but are not limited to: (1) the testability of the technique or scientific theory; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the technique had gained “general acceptance.” Daubert at 593-594, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469.
In Cheairs v. State ex rel. Dept. of Transp. And Dev., 03-680, pp. 1-2 (La.12/3/03), 861 So.2d 536, 538, the Louisiana Supreme Court recognized that |sDaubert addressed only the issue of the reliability of an expert’s methodology and not whether an expert possessed the proper qualifications to testify. The Court, therefore, adopted the three-part inquiry expressed in City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548 (11th Cir.1998), concluding it “provides more comprehensive guidance to district courts determining the admissibility of expert testimony.” Id., 03-680 at 10, 861 So.2d at 543. Thus, the admission of expert testimony is proper only if all three of the following guidelines are met: (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert, and (3) the testimony assists the trier of fact through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue. Id., 03-680 at 9, 861 So.2d at 542 (citing Harcros Chemicals, 158 F.3d at 562).
The defendants assert that the trial court excluded their expert witnesses solely on the basis that the experts were not physically present to testify at the Daubert hearing. That is not supported by the record.
Although the transcript from the Dau-bert hearing reflects that there was an extensive discussion about the absence of the defense’s two expert witnesses, Mr. Hoffpauir and Dr. Laborde, the record clearly indicates that the trial court proceeded with the hearing, using the submitted depositions and arguments of counsel. Specifically, the trial court stated:
Why don’t we do this, [sic] Why don’t we ... proceed on argument, based upon the depositions and your pleadings filed ... And if the burden of proof has not been met, then I will rule accordingly.
14At that point, the plaintiff objected arguing that there was a requirement that the party offering or proffering expert testimony produce their witnesses in open court for examination. He then continued with an argument on the merits.
In his argument, which was substantiated by the depositions admitted at the hearing, the plaintiff noted that, Mr. Hoffpauir did not set forth the methodology he used or testify concerning whether or not his results were peer reviewed or predictable. The court interjected that he also admitted *50 in his deposition that he never performed any mathematical calculations, examined the vehicles, or communicated with the parties.
The plaintiff then explained that Mr. Hoffpauir had never been allowed to testify about “sideswipe” cases, which was the type of collision in this accident. He did not have an opinion as to what “G forces” were sustained or whether injury was possible in this accident. He made no measurements of crush damage, and he did not perform any mathematical calculations relating to the accident. The plaintiff concluded by arguing that Mr. Hoffpauir’s opinion should be excluded for his failure to measure crush damage, and to perform the expected calculations in accordance with the well-accepted methodologies of accident reconstruction.
Next, the plaintiff addressed Dr. La-borde’s opinion. The plaintiff explained that in his deposition, Dr. Laborde acknowledged that his opinion regarding the plaintiff was formed on the strength of Mr. Hoffpauir’s report together with visibly poor photographs, which he reviewed to determine the impact was slight and there should have been no injury. Dr. Laborde agreed that Mr. Hoffpauir was supposed to perform calculations to determine |¡“Delta-V.” He further conceded that injuries to a person’s spine vary depending on the condition of the spine; and since he never physically examined the plaintiff, -he could not determine the condition of the spine at the time of the accident, or thereafter.
Finally, the plaintiff mentioned that Dr. Laborde had been excluded by more than five judges on grounds of being bias. He then concluded his argument after urging the court to exclude both experts in the absence of proof that the methodology used by Mr. Hoffpauir, which Dr. Laborde based his opinion on, was reliable, repeatable, and acceptable under Daubert standards.
The defendants rebutted stating that Mr. Hoffpauir testified that after reviewing the photographs, he determined there was no measurable crush damage by which to perform the mathematical calculations necessary because the accident involved a “sideswipe” impact. When the court expressed concern about the quality of the photographs which Mr. Hoffpauir used to make his determination, the defendants clarified that he had also reviewed the police report and the property damage estimate. They also responded that Mr. Hoffpauir could not talk to the plaintiff without counsel’s permission.
The plaintiff then moved to admit his memorandum and attachments referred to by the court. He again maintained his objection regarding the expert witnesses’ failure to testify at the hearing. The trial court admitted his motion, memorandum, and attachments. After asserting that it had reviewed the memoranda along with the pleadings and attached depositions, and noting that the witnesses were not present, the trial court granted the plaintiffs motion. The written judgment specifically states: “After consideration of the pleadings, the | fimemorandum of counsel, the law, and argument of counsel, and for oral reasons assigned, the Court finds....”
When considering the trial court’s ruling in context with the subject matter of the Daubert hearing, it is clear that the trial court considered the merits of the motion based on the pleadings, depositions, and arguments set forth therein. The court noting on the record that the experts were not present does not establish that that was the court’s sole reason for granting the plaintiffs motion.
*51 An appellate court’s review of a trial court’s decision to allow or exclude expert testimony is conducted under an abuse of discretion standard. Cheairs v. State Dep’t. of Transp. and Dev., 03-680, p. 6 (La.12/3/03), 861 So.2d 536, 541. Since the record reflects that there were issues with the methodology, reliability, and necessity of the expert witnesses, we find that the trial court did not abuse its discretion in excluding the experts’ testimony.
The defendants further argue that the jury’s damages award should be overturned as it is excessive. The jury awarded the plaintiff $125,000 in general damages and $75, 000 in special damages.[3] The defendants assert that the record does not support the general and special damage awards.[4]
It is well-settled that a judge or jury is given great discretion in its assessment of quantum, for both general and special damages. The assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. La. C.C. art. 2324.1; Wainwright v. Fontenot, 00-492, p. 6 (La.10/17/00), 774 So.2d 70, 74.
17As a result of the accident, the forty-three-year-old plaintiff suffered injuries to his neck and spine. These injuries caused chronic radiating pain through the plaintiffs arms and legs, as well as headaches. After the accident, the plaintiffs activities were limited and he could no longer enjoy recreational activities, such as billiards or basketball.
Dr. Jason Kennedy treated the plaintiff for injuries to his neck and back. After several months of chiropractic treatment, the plaintiff obtained an MRI and was referred to neurosurgeon, Dr. Bradley Bartholomew. The MRI revealed that he suffered disc herniation in the cervical and lumbar areas of the spine. Dr. Bartholomew also found that he was suffering from cervical facet syndrome.[5] He was then referred to the office of Dr. Fred DeFran-cesch, a spinal cord injury specialist, where he received injections into his cervical facet which temporarily relieved the pain.
All three doctors testified that the plaintiffs injuries were directly related to the accident. Both Dr. Bartholomew and Dr. DeFrancesch testified that since the plaintiff had relief with the injections, he would be a good candidate for a rhizotomy.[6] Dr. Bartholomew testified that the plaintiff would most likely need the rhizotomy before he dies. Dr. Kennedy also testified that without a procedure, the plaintiff’s pain would continue and he would need chiropractic treatment at least one to two times a month for the rest of his life.
After considering the evidence, the jury awarded the plaintiff $125, 000 in general damages. Notably, this award is consistent with other general damages awards upheld by this Court. See Ruffin v. Burton, 08-893, pp. 9-10 (La.App. 4 Cir.5/27/09), 34 So.3d 301, 305-07, where this Court upheld a general damages award of *52 $125,000 given to a motorist, who was injured when a truck operated by Sewerage and Water Board employee crossed lanes into oncoming traffic and struck her vehicle. The motorist in Ruffin underwent approximately two-and-a-half years of regular treatment for pain associated with her neck and back injuries, and her complaints of shoulder pain included pain that radiated to her neck. Id. Not only did the plaintiff in this case endure years of treatment for neck and back pain, he will likely have to undergo a surgery procedure to find more permanent relief from his pain.
Since there is ample evidence in the record to support the jury’s general damage awards, we cannot find that there was an abuse of discretion. However, we find that the trial court committed manifest error in awarding special damages of past medical expenses.
An appellate court, in reviewing a judge’s factual conclusions with regard to special damages,[7] must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong. Kaiser v. Hardin, 06-2092, pp. 11-12 (La.4/11/07), 953 So.2d 802, 810 (per curiam) (citing Guillory v. Ins. Co. of North America, 96-1084 (La.4/8/97), 692 So.2d 1029). The discretion of the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages. Greenhead Gun Club, L.L.C. v. City of Shreveport, 40,045, p. 14 (La.App. 2 Cir. 10/12/05), 914 So.2d 62, 71.
^Particularly, defendants contest the past medical expenses award of $25,000, asserting that the plaintiff only offered proof for past medical services in the amount of $19,041. After reviewing the invoices, we find that the fact-finder was clearly wrong in awarding past medical damages beyond the amount supported by the record. We, therefore, reduce the special damage award, for past medical expenses only, from $25,000 to $19,041.
Accordingly, the judgment is affirmed. The award for past medical expenses is amended to $19,041; and the remaining damage awards are affirmed.
AMENDED AND AFFIRMED
TOBIAS, J., concurs in the result and assigns reasons.
LOMBARD, J., dissents.

. Claims made on behalf of Alfred Donaldson's minor son were settled and are not at issue in this appeal.

. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. In particular, the jury awarded the following: $25,000 for past medical expenses, $50,000 for future medical expenses, $50,000 for past and future physical pain and suffering, $50,000 for past and future mental anguish, and $25,000 for loss of enjoyment of life.

. In brief, the plaintiff does not challenge the award for loss of enjoyment of life. Instead, it appears that he mistakenly challenged an award for loss of consortium, when there was none.

. Cervical facet syndrome causes pain when the facet joints in the neck do not move properly.

. A rhizotomy is a procedure that destroys nerves.

. Special damages are those which have a "ready market value,” such that the amount of damages theoretically may be determined or calculated with relative certainty, such as medical expenses and past lost wages. Kaiser, 06-2092 at 11, 953 So.2d at 810 (citing McGee v. AC and S, Inc., 05-1036 (La.7/10/06), 933 So.2d 770).