EDWIN A. LOMBARD, Judge.
_JjThe Appellants, Alfred Ronsonette and his wife, Darrall Ronsonette (“Mrs.Ronso-nette”), seek review of the March 10, 2014 judgment of the district court awarding him $10,155.76, inclusive of general damages and medical expenses, plus legal interest, as a result of injuries he sustained as a passenger on a St. Bernard Urban Rapid Transit bus operated by defendant Edith Cantrell (“Ms.CantreU”). The Appellants further seek review of the denial of Mrs. Ronsonette’s loss of consortium claim. Finding that the district court abused its discretion, we vacate the award of the district court, and award Mr. Ronso-nette $16,567.53 in past medical expenses and $9,000 for general damages, together with interest from date of judicial demand.’ Additionally, we reverse the district court’s denial of Mrs. Ronsonette’s loss of consortium claim and award her $1,000, with legal interest from date of judicial demand. Lastly, we deny the answer to appeal of the Appellee, St. Bernard Parish Government (“St.Bernard”).
12Facts
In February 2010, while a passenger on a St. Bernard bus driven by Ms. Cantrell, Mr. Ronsonette was injured while seated in his electric wheelchair located in the rear of the bus. Mr. Ronsonette, who was 56 years old at the time of the February 2010 accident (“the accident”), boarded the bus while seated in his wheelchair using a lift operated by Ms. Cantrell. After boarding the bus, Mr. Ronsonette parked his wheelchair between two seats with his back to the rear wall. It is undisputed that Ms. Cantrell did not use restraints to tie-down Mr. Ronsonette’s. wheelchair to the bus.[1] Consequently, Mr. Ronsonette’s wheelchair later toppled when Ms. Cantrell made a right turn. Mr. Ronsonette fell to his right side on the bus floor while still strapped into his wheelchair. He was transported from the bus by ambulance to the emergency room at Tulane University Hospital (“Tulane”).
The Appellants later filed suit against Ms. Cantrell and her employer, St. Bernard, for injuries Mr. Ronsonette sustained in the accident and for loss of con *213 sortium of Mrs. Ronsonette. A bench trial was held in September 2013. The district court rendered judgment awarding Mr. Ronsonette damages in the amount of $10,155.76, inclusive of general damages and medical expenses, plus legal interest. The district court also dismissed the claims of Mrs. Ronsonette for loss of consortium.
RThis timely appeal followed, and the Appellants raise three assignments of error:
1. The district court abused its discretion in failing to award Mr. Ronso-nette all of his past medical expenses;
2. The district court abused its discretion when it awarded an egregiously low sum to Mr. Ronsonette for pain and suffering; and
3. The district court abused its discretion when it dismissed Mrs. Ronso-nette’s loss of consortium claim.
Past Medical Expenses
In their first assignment of error, the Appellants argue that the district court abused its discretion when it failed to award all of Mr. Ronsonette’s past medical expenses, totaling $26,077.03. The Appellants’ main argument is that Mr. Ronsonette’s treating physicians relate his medical treatment directly to the accident. Additionally, the Appellants aver that St. Bernard presented no evidence at trial to dispute that Mr. Ronsonette suffered from some injury as a result of the accident and was entitled to at least conservative care.
The Appellants contend that as a result of the accident Mr. Ronsonette received a little over three years of medical treatment. Following his emergency room treatment, he treated with three- doctors for his injuries: Dr. William Alden; Dr. Allen Kaye (“Dr.Kaye”) and Dr. Gregory Stewart (“Dr.Stewart”). He primarily treated with Dr. Kaye and Dr. Stewart. The Appellants assert that the deposition testimony of these two doctors, which was introduced at trial, establishes that there is a direct causal connection between the accident and Mr. Ronsonette’s injuries. Moreover, the district court’s award, they aver, does not Reven cover the cost of Mr. Ronsonette’s emergency room visit, which totaled $12,807.73.[2] Consequently, they argue that the district court abused its discretion and its judgment is not supported by the evidence in the record. We agree.
Medical expenses are a component of special damages. Cormier v. Colston, 05-0507, p. 9 (La.App. 3 Cir. 12/30/05), 918 So.2d 541, 547-48 [citations omitted]. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. Id. (citing Iwamoto v. Wilcox, 04-1592 (La.App. 3 Cir. 4/6/05), 900 So.2d 1047). “It is well-settled that a judge or jury is given great discretion in its assessment of quantum, for both general and special damages. The assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review.” Donaldson v. Hudson Ins. Co., 12-1013, p. 6, (La.App. 4 Cir. 4/10/13), 116 So.3d 46, 51 (citing La.Civ.Code art. 2324.1; Wainwright v. Fontenot, 00-492, p. 6 (La.10/17/00), 774 So.2d 70, 74). However, the discretion of the trier of fact to assess special damages, is narrower or more limited than the discretion to assess general damages. Id., p. 8, 116 So.3d at 52 [citation omitted].
*214 An appellate court, in reviewing a judge’s factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: .there must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong. Id. Where two permissible views of the evidence exist, the fact-finder’s choice cannot be manifestly erroneous or clearly wrong. Hammond v. Rahsaana, 13-1202, p. 5 (La.App. 4 Cir. 2/26/14), 135 So.3d 1207, 1211.
The district court in its Reasons for Judgment explained that it found fault on behalf of Ms. Cantrell, and St. Bernard for failing to secure Mr. Ronsonette with the appropriate restraints. Thus, district court reasoned that “[t]he only real issue the Court was confronted with was whether the Plaintiff was actually injured, and to what degree.” The district court determined that Mr. Ronsonette’s credibility was “verily destroyed” and it found that his testimony “regarding his alleged injury was greatly exaggerated.” The Court further elaborated that it considered his injury background history and criminal history. The Court opined that the testimony of the Appellants was discredited an.d that Mr. Ronsonette suffered very minimal injury.
In matters of credibility, an appellate court gives great deference to the findings of the trier of fact. Franz v. First Bank Sys., Inc., 03-0448, p. 9 (La.App. 4 Cir. 2/11/04), 868 So.2d 155, 162 (citing Rosell v. ESCO, 549 So.2d 840 (La.1989)). The trial court is in the best position to view the demeanor and mannerisms of the witnesses. Id.
While the record supports the district court’s decision that Mr. Ronsonette was not the most credible witness[3], the record also supports a finding that Mr. Ronsonette did sustain minor injuries in the accident. Indeed, the district court also reasoned that Mr. Ronsonette sustained minor degree of injury otherwise it would | finot have awarded him general and special damages. However, the district court failed to award Mr. Ronsonette even the cost of his emergency medical treatment. The Supreme Court has held that an award for past medicals representing a plaintiffs costs for ambulance transportation and emergency room treatment is reasonable and consistent with evidence indicating the plaintiff suffered only minor injuries from the accident. Miller v. Clout, 03-0091; p. 8 (La.10/21/03), 857 So.2d 458, 463. See also Broussard v. Fredericks,, 04-1064, pp. 2-3 (La.App. 3 Cir. 12/8/04), 889 So.2d 483, 485.
Considering that the district court’s total award is less than the cost of Mr. Ronsonette’s emergency medical treatment, we find that there was no reasonable factual basis for the district court not to award Mr. Ronsonette more for his medical expenses. We further find that the district court’s judgment is clearly wrong. We are unable to increase the amount of medical expenses to the lowest reasonable amount because the district court did not delineate what portion of its award was being made for medical ex- *215 penses.[4] Therefore, we vacate the district court’s award in toto.
Any person injured through the fault of another is entitled to full indemnification for his damages. La. Civ. Code art. 2315; Wainwright v. Fontenot, 00-492, p. 5 (La.10/17/00), 774 So.2d 70, 74. A plaintiff must, however, establish he incurred past medical expenses in good faith as a result of his injury. Menard v. Lafayette Ins. Co., 09-1869 (La.3/16/10), 31 So.3d 996, 1006 [citation omitted].
|7Under the facts of this case, we find that Mr. Ronsonette is entitled to the $12,807.73 he incurred for his emergency treatment. Moreover, the record supports Mr. Ronsonette receiving past medical expenses for six months of treatment he received following the accident.
Although he could walk to some extent, Mr. Ronsonette primarily relied upon using his power wheelchair for mobility. Prior to the accident, he had injured himself when he fell down a manhole sustaining neck and right hip, right foot, right shoulder, and right arm injuries. Additionally, in the late 1990s, he underwent neck surgery whereby a portion of his neck was fused to the seven level. Post-accident, Mr. Ronsonette suffered a seizure and sustained injuries to his ribs in September 2010, as a result of “horse-playing” with his friends. Mr. Ronsonette further testified that before the September 2010 incident, his body was back to his level of normal. He explained that he reached his pre-accident physical condition six months after the (bus) accident and that it took a year for his breathing to return to normal.
Dr. Kaye, who treated Mr. Ronsonette from February 25, 2010 until October 13, 2011, testified that he diagnosed Mr. Ron-sonette with cervical strain, thoracic strain, lumbar strain, chest contusions, and bilateral sacroiliitis as a result of the accident. After reviewing the Tulane’s emergency room records indicating that Mr. Ronso-nette was diagnosed with cervical strain and a sternum injury, he developed a treatment plan consisting of physical therapy and prescription medication. Dr. Kaye further stated that normally sacroili-itis and the facet inflammation conditions heal within a six to nine month period. Dr. Kaye testified that when he discharged Mr. Ronsonette from his care Mr. Ronso-nette still felt some discomfort. Dr. Kaye opined that the accident caused Mr. Ron-sonette’s symptoms and injury.
| sSimilarly, Dr. Stewart also opined that Mr. Ronsonette sustained injuries as a result of the accident. Dr. Stewart testified that began treating Mr. Ronsonette in July 2010, and was still treating him in July of 2013, for low back pain and chronic neck pain. Dr. Stewart testified that when Mr. Ronsonette first presented to him for treatment, he diagnosed him with cervical and lumbar degenerative joint disease. He further explained that during his examination of Mr. Ronsonette, he made an objective finding of muscle spasms, which are generally associated with traumatic injuries. The treatment plan he developed for Mr. Ronsonette consisted of MRIs and prescription medication. He testified that the accident of February 10, 2010, caused a significant component of symptoms and injury to Mr. Ronsonette.[5]
*216 Through his testimony coupled with that of his treating physicians, Mr. Ronsonette established by a preponderance of the evidence that his already compromised physical condition was adversely affected by the accident. Defendants take their victims as they find them and are responsible for all natural and probable consequences of their tortious conduct. Am. Motorist Ins. Co. v. Am. Rent—All, Inc., 579 So.2d 429, 433 (La.1991). Where defendant’s negligent action aggravates a pre-existing injury or condition, he must compensate the victim for the full exfent of his aggravation. Id.
We find that the care he received within the six-month period following the accident was reasonable and necessary to treat the injuries he sustained. Thus, we award him the following medical costs for those months of treatment with legal |8interest from the date of judicial demand:
$786.49 Acadian Ambulance
$11,149.24 Tulane emergency visit
$368.00 Emergency physician bill
$504.00 Radiologist bill
$318.30 Dr. Alden, Metropolitan Health Group
$1,350.00 Dr. Kaye, Dyess Medical Center
$2,091.50 Dr. Stewart, Tulane
$16,567.53 Total:
General Damages Award
Having vacated the district court’s award general and special damages for the reasons stated above, we address the Appellants’ argument that Mr. Ronsonette is entitled to an award of $40,000 in general damages.
General damages “may not be fixed with pecuniary exactitude; instead, they ‘involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.’ ” Duncan v. Kansas City S. Ry. Co., 00-66, p. 13 (La.10/30/00), 773 So.2d 670, 682 (quoting Keeth v. Dep’t of Pub. Safety & Transp., 618 So.2d 1154, 1160, (La.App. 2 Cir.1993)).
Based on the record and considering that Mr. Ronsonette’s injuries during his six-month treatment period increased his loss of physical enjoyment, inconvenienced him and augmented his physical pain or suffering, we award him $9,000 in general damages.
Mrs. Ronsonette’s Loss of Consortium Claim
In their third assignment of error, the Appellants argue that the district court abused its discretion by dismissing Mrs. Ronsonette’s loss of consortium claim. They aver that the uncontroverted testimony in support of her loss of consortium Jjjdaim evidences that the district court abused its discretion and committed legal error when it dismissed her claim. They maintain that $10,000.00 is the minimum amount that could be awarded for this element of damages.
Loss of consortium claims encompass the following seven items: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations; (4) loss of performance of material services; (5) loss of financial sup *217 port; (6) loss of aid and assistance; and (7) loss of fidelity. Ritter v. Exxon Mobile Corp., 08-1404, p. 11 (La.App. 4 Cir. 9/9/09), 20 So.3d 540, 547 [citation omitted]. “Not every physical injury will result in a loss of consortium or other general damages.” Thonn v. Cook, 03-0763, p. 15 (La.App. 4 Cir. 12/10/03), 863 So.2d 628, 640 [citations omitted]. “The operative question is whether the fact finder abused its great discretion in finding that the plaintiff failed to prove compensable loss of consortium.” Id.
At trial, Mrs. Ronsonette testified that she and Mr. Ronsonette have been married for 20 years. She explained that despite Mr. Ronsonette’s disability status prior to the accident he was a “[v]ery happy person, no stress” and would actively assist with household chores. She testified that following the accident he has been more depressed, and does not assist her with household chores. She also stated that they are unable to sleep in the same bed due to his rib injuries. Mrs. Ronsonette was not cross-examined by St. Bernard.
As stated above, the district court did not find the Appellants’ credible. We note, however, that Mrs. Ronsonette’s testimony was not challenged at trial. Considering that Mr. Ronsonette did sustain some minor injuries and that Mrs. Ronso-nette’s testimony was not contradicted at trial, we find that the district court abused its discretion in dismissing her loss of consortium claim. Mrs. N Ronsonette’s testimony showed that she experienced at least a minor degree of loss of society and companionship, performance of material services and aid and assistance as well as impairment of sexual relations as a result of this accident. Thus, we reverse the district court’s denial of her claim and award her $1,000 for loss of consortium with interest from the date of judicial demand.
Answer to Appeal
St. Bernard argues that Mr. Ronso-nette’s award of $10,155.76 should be reversed. Alternatively, it argues that the judgment should be reduced by 90% due to the comparative fault of Mr. Ronsonette. St. Bernard’s- argument that the district court’s award should be reversed is rendered moot as a result of our decision to vacate the district court’s judgment. Moreover, we agree with the district court’s reasoning that Ms. Cantrell and St. Bernard are 100% at fault. Thus, the answer to appeal is denied.
DECREE
For the foregoing reasons, the judgment of the district court is vacated. Alfred Ronsonette is awarded $16,567.53 in past medical expenses as well as $9,000 in general damages, together with legal interest from date of judicial demand. Darrall Ronsonette is awarded $1,000 for loss of consortium with legal interest from the date of judicial demand. The answer to the appeal of St. Bernard Parish Government is denied.
JUDGMENT VACATED IN PART; REVERSED IN PART AND RENDERED; ANSWER TO APPEAL DENIED

. Ms. Cantrell and St. Bernard allege that Mr. Ronsonette requested that his wheelchair not be restrained.

.Mr. Ronsonette’s emergency expenses include:
1. Acadian Ambulance $786.49
2. Tulane $11,149.24
3. Emergency Room physician bill $368.00
4. Radiologist bill $504.00

. The record supports the district court’s determination that Mr. Ronsonette was not a credible witness and that his injuries may have been exaggerated. He testified at trial ‘ and his deposition that he did not have a criminal history, but on cross-examination admitted to pleading guilty to at least four crimes. Furthermore, he testified that prior to and after the accident, he sustained other severe injuries from accidents in which he was involved. He testified that a month prior to the accident he suffered with neck and back pain, which he had experienced for years.

. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Wainwright, 00-0492, p. 6, 774 So.2d at 74 (citing Coco v. Winston Indus., Inc., 341 So.2d 332, 334 (La.1977)).

. He opined that a MRI conducted on October 27, 2010 showed mild degenerative *216 changes at disc levels in the lumbar spine that were worse at L3-4, as well as mild to moderate narrowing of the areas where nerves come out and a broad based disc bulge at that level also impacting the area where nerves come out.