| CHRISTOS MANUEL | * | NO. 2022-C-0288 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| FAT CATZ MUSIC CLUB, INC., ET AL | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2009-10396, DIVISION "A"
Honorable Ellen M Hazeur, Judge
* * * * * *
**Judge Edwin A. Lombard**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Joy Cossich Lobrano, Judge Paula A. Brown)

***LOBRANO, J., CONCURS IN THE RESULT***

Louis R. Koerner, Jr.
KOERNER LAW FIRM
1204 Jackson Avenue
New Orleans, Louisiana 70130-5130

    COUNSEL FOR THE PLAINTIFF/RESPONDENT


T. GREGORY SCHAFER
SCHAFER & SCHAFER, L.L.P.
328 Lafayette Street
New Orleans, Louisiana 70130

    COUNSEL FOR DEFENDANTS/RELATORS

**WRIT GRANTED; JUDGMENT REVERSED**

**AUGUST 3, 2022**

EAL

PAB

On application for supervisory writ, the defendants Fat Catz Music Club, Inc., Nicholas Karno, III, and Founders Insurance Company, Inc. ("the defendants"), seek review of the district court judgment of March 28, 2022, denying their motion *in limine*. After review of the defendants' application for supervisory review in light of the relevant facts, arguments of the parties, and applicable law, we find that the district court erred in granting the motion *in limine,* reverse the district court judgment, and remand the matter to the district court for further proceedings.

***Relevant Facts and Procedural History***

On October 1, 2009, Christos Manuel ("the plaintiff) filed a petition for damages asserting that on October 4, 2008, he was a patron of the Fat Catz Music Club and was injured by the manager and some employees of the music club when he questioned some of the charges on his bill. By first and second amended petitions, he included Nicholas S. Karno, III, Inc. and other, including Founders Insurance Company, as defendants.

A major issue in the trial will be the plaintiff's damage claims. At the time of the incident, the plaintiff allegedly was developing a website for his company, MenuExplorer.com, Inc. d/b/a goCruso.com, a search engine to allow consumers to

1

look for food and drink and as a networking site for the food and beverage industry. The purported launch date for the website was January 1, 2009. In preparation for trial, the plaintiff hired Matthew D. Roger, a certified public accountant (CPA), to render a report on the economic damages sustained by the plaintiff because of injuries suffered in the incident.

On November 27, 2018, Mr. Roger issued his report clearly indicating that it is based on documents provided by the plaintiff or his business advisors and that he did not compile, review, or audit any financial information. Based on the documents provided by the plaintiff, Mr. Roger opined that the plaintiff sustained past lost earnings of $565,552.00 and diminution of stock value of $800,000.00. To arrive at this past lost earnings figure, Mr. Roger relied on plaintiff's anticipated annual salary contained in the financial forecasts prepared by the plaintiff's website (MenuExplorer) accountant:

2007 – 2008:      no salary during the development stage

2009:              $130,000.00

2010:              $130,000.00

2011:              $162,500.00

2012:              $243,750.00

2013:              $341,250.00

2014:              $409,500.00

2015 - 2018:      $429,975.00

In contrast to these projected figures, the report included the plaintiff's actual earnings for the following years:

2011: $30,142.00 (freelance consulting work related to startup technology)

2015: $40,000.00 (earnings as restaurant manager)

2

2016: $78,000.00 (earnings as restaurant manager)

2017 - 2018:$80,500.00 (earnings as restaurant manager)

Mr. Roger calculated that a twenty-percent probability of success was appropriate to the plaintiff's circumstances. Accordingly, based on the plaintiff's anticipated annual salary from 2007 – 2018 of $2,827,758.00 in conjunction with the twenty-percent probability of success, Mr. Roger determined that the plaintiff lost a total of $565,552.00 in past earnings. Mr. Roger also calculated that, had the plaintiff retained ownership of Ship to Shore restaurant, his past lost wages in that endeavor would have totaled an additional $495,917.00 for the years 2006 through 2018.

Mr. Roger also calculated that the plaintiff's stock value suffered a diminution. The report indicates that the plaintiff raised nearly $1,000,000.00 from investors between 2007 and 2012, a total negotiated enterprise value of $5,000,000.00 existed, and the plaintiff would retain an eighty-percent equity stake. Based on this and applying "an 80% discount factor to reflect a 20% probability of success," Mr. Roger calculated the plaintiff's prospective stock value to be $800,000.00.

On September 23, 2021, the defendants filed the instant motion *in limine* to exclude Mr. Roger and his report from trial, arguing that the factual basis of Mr. Roger's report is based on speculation, offers no opinion on why the start-up was not successful or why the respondent sustained the losses, does not describe the methodology used to arrive at the twenty-percent chance of success factor, and will not assist the trier of fact in understanding the evidence or determining any relevant issue of fact. In support the defendants attached numerous documents, including the following: (1) a medical record from CareMount Medical dated

3

November 19, 2018, indicating the plaintiff complained that his eyes felt as if they were bulging and he believed the cause was his sinuses: (2) an executive summary for goCruso indicating that that the website was a social networking site for the foodservice and beverage industries and claiming that it would enable restaurants, bars, vendors and users to upload their information and communicate with one another, indicating that the plaintiff was the managing director and averring that the website launched in May 2010, and aimed to be profitable with a positive cash flow through a multitude of revenue streams that allowed restaurants to post menus and specials, vendors to present products and services, and users to communicate directly with the establishments; (3) 2007 income tax return for MenuExplorer.com, Inc., showing gross receipts of $0 and ordinary business income (loss) totaling $-2,800.00; (4) 2008 income tax return showing gross receipts of $0 and ordinary business income (loss) totaling $-4,116.00; (5) 2009 income tax return showing gross receipts of $0 and ordinary business income (loss) totaling $-5,000.00; (5) 2010 income tax return showing gross receipts of $0 and ordinary business income (loss) totaling $-5,599.00: (6) 2011 income tax return showing gross receipts of $80,000.00 and ordinary business income (loss) totaling $-6,371.00' (7) 2012 income tax return showing gross receipts of $86,900.00 and ordinary business income (loss) totaling $-13,395.00: (8) 2013 income tax return showing gross receipts of $0 and ordinary business income (loss) totaling $-308.00; (9) 2014 income tax return showing gross receipts of $0 and ordinary business income (loss) totaling $-5,428.00; 2015 income tax return showing gross receipts of $0 and ordinary business income (loss) totaling $-4,308.00; (10) 2016 income tax return showing gross receipts of $0 and ordinary business income (loss) totaling $-2,180.00.

In addition the defendants submitted a copy of the plaintiff's purportedly independent accountant's report (the letterhead states only "Firm's Letterhead" so it unclear who prepared the document) alleging that the firm examined the forecasted statements of income for goCruso.com as of "December 31, 20__" and opining that the forecasted statements of income, prepared by goCruso.com, were in conformity with the guidelines for presentation of a forecast established by the American Institute of Certified Public Accountants. In addition, the report observed that there are usually differences between the forecast and actual results because events and circumstances do not occur as expected, leading to the difference between the forecast and actual results. In contrast to Mr. Roger's income projections, the accountant's report projected the plaintiff's loss of $-65,711.00 for 2009, with projected profits of $38,702.00 in 2010, $2,990,760.00 in 2011, $5,395,557.00 in 2012, $7,248,506.00 in 2013, $9,912,326.00 in 2013, $9,912,326.00 in 2014, and $14,629,472.00 in 2015.

The defendants also submitted a document by MenuExplore.com, Inc. stating that its income projections for 2009-2015 were for the purpose of obtaining potential capital contributions and specifically stating that it should not be considered as a presentation of expected future results. The document noted it relied on the financial histories of OpenTable and Yelp to prepare its own projections. Notably, however, OpenTable began operating in 2004 and there is no growth percentage for that year, although it listed a thirty-nine percent growth rate for 2005. Likewise, Yelp began operating in 2009 and there is no growth percentage for that year, although Yelp listed a forty-six percent growth rate for 2010. Nonetheless, the forecasted first year growth (2010) by the unknown

5

independent accountant's report for the plaintiff's goCruso.com website was projected to be eighty-eight percent.

The defendants submitted an excerpt from the plaintiff's February 16, 2011 deposition wherein he indicates he owned Ship to Shore Realty, L.L.C. and MenuExplorer.com, Inc, and alleging that the realty company owned a building containing a restaurant and three apartments. The plaintiff also testified that MenuEplorer.com, Inc. was created in 2006 and that he was unable to fully operate MenuExplorer.com from October of 2008 through March of 2009 due to the incident at Fat Catz Music Club. The plaintiff asserted that during that time period he was doing presentations to raise capital and was unable to pay the developers, rent, and bookkeepers. As a result, the plaintiff alleged that he had to start over and did not launch the website until January 15, 2011.

The defendants also submitted an executive summary for Enjoy, a website and app designed to provide content from proprietors to users and bridge the marketing gap separating owners, vendors, and consumers. Specifically, it would allow proprietors of restaurants, cafes, food trucks, etc. to enter their menus and specials and allow consumers to find the information. The executive summary provides named the plaintiff as its founder and president and bears a copyright of 2021.

In opposition to the defendants' motion *in limine* to exclude Mr. Roger and his report from the trial, the plaintiff asserted only that he suffered economic damage from the brutal, mafia-style beating and that another division of Civil District Court allowed Mr. Roger to offer expert testimony about future economic damages. The plaintiff offered no law or jurisprudence in support of Mr. Roger's methodology or assumptions, however, submitting only Mr. Roger's continuing

6

education reports for the years 2020 and 2021, as well as a statement on standards for consulting services prepared by the American Institute of Certified Public Accountants. (Notably, these stated standards require a member of the profession to "[o]btain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.") In addition, the plaintiff submitted the Mr. Roger's LinkedIn profile identifying Mr. Roger as the managing member of Roger & Associates and details his education. He also submitted Mr. Roger's curriculum vitae (CV) outlining his education, areas of expertise, and indicating that he provided deposition testimony in two cases then pending in civil district court, as well as trial testimony in a third. The plaintiff also included the report prepared by Mr. Roger and the exhibits attached thereto. Notably, Exhibit C pertains to the diminution of stock, noting that MenuExplorer.com, Inc. raised $470,000.00 in capital in 2007, $96,400.00 in 2008, $46,100.00 in 2009, $227,500.00 in 2010, $55,400.00 in 2011, and $102,500.00 in 2012.

The district court held the hearing on the defendants' motion *in limine* on February 15, 2022. Following questioning by counsel for both parties, the district court deemed Mr. Roger an expert in accounting but not in forensic accounting.

Mr. Roger testified at the hearing that he reviewed approximately 250 pages of documents including tax returns of the respondent, tax returns of the start-up, the respondent's deposition, and financial documents prepared internally by the start-up and with the external help of an accountant, such as the financial forecasts and projections. Mr. Roger stated he found the salary amounts contained therein to be reasonable based on his experience with other start-ups. Mr. Roger noted the success rate for start-ups over ten years is very low. Therefore, he believed the

start-up possessed a twenty percent probability of success and discounted the salary amounts by eighty percent. Mr. Roger indicated he utilized twenty percent based on his opinion of the concept, the plaintiff's experience and reputation in the restaurant industry, the plaintiff's success at his restaurant, and his ability to raise capital related to the concept. Mr. Roger opined that the attack on the plaintiff resulted in the curtailing of the momentum of the start-up. Mr. Roger conceded he had never been qualified as an expert in the field of business evaluation, including a business's chance of success. Mr. Roger conceded he took the information provided by the plaintiff at face value and found the plaintiff's forecast and projections to be reasonable and not grossly out of bounds.

Mr. Roger also acknowledged that, although he had taken continuing education classes related to stock valuation, he had not been qualified as an expert in stock valuation. Mr. Roger conceded the independent accountant's report (that he relied on) lacked a name, date, or signature, but claimed that at the time he prepared the report, he possessed the accountant's name although he could no longer recall it.

At the conclusion of the hearing, the district court concluded there was no evidence that the opinion of Mr. Roger was based on pure speculation or completely unsupported. The district trial court indicated generally that the factual basis of an expert's opinion goes to credibility and not admissibility. On March 28, 2022, the trial court signed a judgment denying the motion *in limine*.

This writ application was timely filed. As they did before the district court, the defendants argue on application for supervisory writ that their motion *in limine* should be granted because Mr. Roger's report is riddled with speculation and conjecture, not grounded in reality, and therefore unreliable. Accordingly, the

defendants assert that Mr. Rogers' opinion will not assist the jury in understanding the evidence or determining an issue of fact and the judgment of the district court denying their motion should be reversed.

In accordance with the factors enunciated in *Herlitz Const. Co., Inc. v. Hotel Inv'rs. of New Iberia, Inc*., 396 So.2d 878 (La. 1981), we have determined it is in the interest of judicial efficiency and fundamental fairness to the litigants to exercise our supervisory jurisdiction and rule on the merits in this pre-trial matter.

***Standard of Review***

An appellate court reviews a decision to allow or exclude expert testimony under an abuse of discretion standard. *Donaldson v. Hudson Ins. Co*., 2012-1013, p.6 (La. App. 4 Cir. 4/10/13), 116 So.3d 46, 51 (*citing Cheairs v. State Dep't. of Transp. and Dev.*, 2003–0680, p.6 (La.12/3/03), 861 So.2d 536, 541). Although this standard is highly deferential, when the district court's conclusion is based on an erroneous view of the law or reached in a capricious or arbitrary manner, it is an abuse of discretion. *Schwarzenberger v. Louisiana State Univ. Health Scis. Ctr. New Orleans,* 2017-0024, p. 7 (La. App. 4 Cir. 8/24/17), 226 So.3d 1200, 1205-1206 (citations omitted); *see also A.S. v. D.S.*, 2014-1098, p.17 (La. App. 4 Cir. 4/8/15), 165 So.3d 247, 257 (Arbitrary or capricious means the absence of a rational basis for the action taken); *see generally* 19 La. Civ. Law Treatise, Evidence And Proof § 11.3 (2d ed.).

***Applicable Law***

La. Code Evid. art. 702, pertaining to expert testimony, provides in pertinent part:

> (A)  A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

Pursuant to La. Code Civ. Proc. art. 1425(F(1), "[a]ny party may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence." *See also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 593-595 (1993) (setting forth a non-exclusive list of factors for a district court to consider in determining reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community). In the Louisiana Supreme Court discussed the issue of expert testimony in light of *Daubert*:

The trial court performs the important gatekeeping role of ensuring that any and all scientific testimony or evidence admitted is not only relevant, but reliable. The objective of the gatekeeping requirement is to ensure the reliability and relevancy of expert testimony by making certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes an expert's practice in the relevant field. The expert's opinions must be grounded in scientific methods and procedures, not subjective belief or unsupported speculation.

*Melerine v. Tom's Marine & Salvage, L.L.C.*, 2020-00571, p.17 (La. 3/24/21), 315 So.3d 806, 818 (internal citations omitted). Thus, when a proposed witness does

not qualify as an expert based on lack of knowledge, skill, experience, training, or education, or the testimony does not meet the criteria of La. Code Evid. art. 702(A)1 – (A)(4), that witness's testimony is inadmissible. *See Williams v. Gen. Motors Corp.*, 639 So.2d 275, 290 (La. App. 4 Cir. 1994) (an expert's testimony must meet a threshold level of reliability to be admissible).

### *Discussion*

Upon review, we do not find that the report and testimony of the plaintiff's expert witness is based on the sufficient facts and data as required by La. Code Evid. art. 702.  As such, neither the expert witness nor his report are reliable evidence suitable for presentation to a jury.

Specifically, the Mr. Roger and his report merely accept as true the facts provided by the plaintiff with regard to the financial forecasts of the plaintiff's start-up internet business; there is no evidence that Mr. Roger performed an independent analysis of the numbers provided by the plaintiff.  Accordingly, the numbers relied on in the report are solely those provided by the plaintiff.  For instance, the report states it is based on past earnings information prepared by the plaintiff's accountant, but the supporting exhibit containing the information on potential earnings lacks any information on the identity of the preparer. Additionally, Mr. Roger concedes that he is unaware of what methods were used to prepare the plaintiff's financial forecasts and projections and, moreover, offers no evidence that reasonable accountants (and expert witnesses) simply and blindly accept numbers provided by their clients in formulating their opinions.  Moreover, Mr. Roger claims that the projected income is based on information from other comparative start-ups, referencing OpenTable and Yelp, but provides no evidence that these social media platforms are similar to the plaintiff's start-up business.

11

Similarly, there is no verification of the information pertaining to OpenTable and Yelp, nor does Mr. Roger explain the drastic discrepancies between the plaintiff's projected profit claims and those of OpenTable and Yelp., *i.e.,* in its first year, no percentage of growth is provided for by either OpenTable or Yelp and in its second year, OpenTable provides a growth percentage of thirty-nine percent and Yelp a growth percentage of forty-six percent, but the witness (without explanation as to why) provides a  drastically higher projected growth rate for the plaintiff's start-up business: eighty-eight percent for its first year, and sixty-seven percent for its second year.  Nothing in the record or report suggests that a reasonable accountant would rely on projections so drastically different from their supposed similar start-ups in formulating their opinions.

To summarize, the plaintiff launched his website/start-up business on January 15, 2011, several years after the incident underlying this lawsuit. Although Mr. Roger possessed the financial figures representing the actual income as stated in the plaintiff's business tax returns, he elected to ignore actual  income figures and, instead, utilized the financial forecasts and projections provided by the plaintiff to make a determination of past lost earnings.  Mr. Roger also deemed it appropriate to calculate lost earnings through 2018 without any proof that injuries incurred on October 4, 2008, caused the alleged lost earnings through 2018.  Mr. roger reviewed a medical record from 2018, wherein the plaintiff stated he believed the pain he was experiencing was the result of sinuses.  Neither Mr. Roger nor the plaintiff offer evidence that Mr. Roger's method of accepting the financial forecasts and projections over actual income is reflective of the methodology generally accepted by accountants in preparing economic damages reports.  As

such, this record is devoid of evidence as to the types of methods and information relied upon by other accountants to render opinions on economic damages.

Finally, Mr. Roger testified that he arrived at an internet business start-up success rate of twenty-percent based on his opinion of the plaintiff's concept, the plaintiff's experience and reputation in the restaurant industry, the plaintiff's success at his restaurant, and the plaintiff's ability to raise capital but fails to cite any authority demonstrating this is an acceptable method of establishing the success rate of an internet start-up. Under these circumstances, Mr. Roger's theory (which cannot be tested and with an unknown rate of error) is unreliable. Further, Mr. Roger concedes he is not qualified as an expert in stock valuation but the report projections for 2009 - 2015 specifically indicates they were prepared for the purpose of obtaining potential capital contributions. There is no evidence in the record that relying on figures prepared to obtain capital contributions is an acceptable method of establishing stock valuation.

In essence, the plaintiff is attempting to present his own estimation of damages in the guise of an expert opinion. Because plaintiff's witness failed to demonstrate any impartiality in formulating the opinion contained in the economic damages report, he must be precluded from testifying and the district court erred in denying the relator's motion *in limine.*

### Conclusion

The defendant's writ application is granted and the judgment of the district court is reversed.

**WRIT GRANTED; JUDGMENT REVERSED**