977 So.2d 87 (2007)
QUALITY DESIGN AND CONSTRUCTION, INC.
v.
CITY OF GONZALES Through Its Duly Elected Mayor, Johnny BERTHELOT.
No. 2006 CA 2211.
Court of Appeal of Louisiana, First Circuit.
November 28, 2007.
*88 Rick A. Alessi, Christian T. Avery, Gonzales, LA, and Joseph C. Wiley, Baton Rouge, LA, for Plaintiff-Appellant Quality Design And Construction, Inc.
Robert Ryland Percy, III, Katherine Tess Percy, Gordon Dallon Bush, II, Gonzales, LA, For Defendant-Appellee City of Gonzales.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
PETTIGREW, J.
The instant appeal arises out of a public works construction contract in which appellant contractor was the successful low bidder on a municipal water park for children. A date for the substantial completion of the project was fixed, and when the project was not completed by the deadline, the city withheld payment on a portion of the contract as retainage.[1]
The contractor subsequently filed suit claiming that unforeseen obstacles and/or items not contained in the contract had increased costs and lengthened construction time. The trial court rendered judgment awarding the contractor the amount retained, subject to a deduction for 14 days of liquidated damages. From this judgment, the contractor has appealed.

FACTS
In late 2003, the City of Gonzales ("City") solicited bids on a public works project for the construction of a children's "sprayground" and other improvements ("the facility") at a public recreational facility located within the City known as Jambalaya Park. The bid specifications were written around water fixtures and products manufactured by Raindrop Manufacturing; however, the bid specifications allowed a contractor to substitute equivalent engineering-approved products.
The City ultimately received three bids for the construction of the facility with the bid submitted by Quality Design and Construction, Inc. ("Quality") being considerably lower than the other two. As the successful low bidder, Quality entered into a written contract with the City on January *89 14, 2004. The total price specified in the contract for the construction of the facility was $390,663.00.
Throughout the course of its construction, the facility was plagued with delays and other obstacles that caused additional expenses to be incurred and delayed the construction process. On or about August 4, 2004, Quality presented an application for final payment to the City and thereafter submitted a clear lien certificate obtained from the Ascension Parish Clerk of Court. Following the City's approval of Change Order Number 1, the total price of the adjusted contract was $407,487.24. Quality received payments totaling $350,246.70, leaving a final balance of the contract price of $57,240.54. On August 6, 2004, Quality was presented with a punch list that identified sixty-six items that needed to be addressed with respect to the project. It is undisputed that the punch list, prepared on behalf of the City, failed to set forth an estimate of the costs necessary to complete the items identified on the punch list.
Ultimately, a Certificate of Substantial Completion, signed by the project engineer and the City's mayor, fixed July 30, 2004, as the date that the project was substantially complete. Said certificate was thereafter recorded in the mortgage records of Ascension Parish on August 20, 2004. The facility at issue in this litigation has been continuously used for its intended purpose since on or about the date of substantial completion.
The City thereafter refused to pay the outstanding balance and made no payments subsequent to the date of substantial completion.

ACTION OF THE TRIAL COURT
On October 20, 2005, Quality filed a Petition for Mandatory Injunction against the City in the 23rd Judicial District Court. Quality alleged that the City was in violation of Louisiana Public Works statutes that prohibit a public entity from withholding more than 10 percent of the contract price after the expiration of forty-five days from the date of substantial completion. Quality sought to recover the full amount of the unpaid balance of the contract price together with legal interest from the date payment was due, reasonable attorney fees based upon the City's failure to pay as set forth in La. R.S. 38:2191, and for all costs of these proceedings. Quality further prayed that the City be ordered to appear and show cause why a mandatory injunction should not be issued ordering the City to make the full final payment owed pursuant to the public works contract at issue.
The City answered the lawsuit and put forth a reconventional demand to recover funds in excess of $15,000.00 that the City alleged it was required to expend in order to complete the project. The City further alleged that it was entitled to "delay" and/or "liquidated" damages in excess of $60,000.00 as a result of Quality's failure to properly complete the project in a timely manner.
On December 14, 2005, Quality filed an Amended and Supplemental Petition against the City wherein Quality re-asserted the demands set forth in its original Petition for Mandatory Injunction and sought additional expenses documented on the written change orders in an amount to be determined by the court. Quality further sought any and all applicable statutory penalties based upon the City's failure to comply with the provisions of the Louisiana Public Works Act, together with damages representing the additional costs and financial losses occasioned by Quality's attempts to satisfy the unreasonable demands of the City.
*90 Following a trial on January 30, 2006, the trial court rendered judgment on March 9, 2006, ruling that Quality was entitled to $54,000.00 from the City together with all costs. With respect to the City's reconventional demand against Quality, the trial court ruled that the City was entitled to recover $2,800.00 from Quality as liquidated damages for the overrun of the completion date. Following rendition of this judgment, both parties requested that the court issue written reasons for its judgment.
In its written reasons, the trial court noted that the work performed by Quality with respect to the "sprayground" facility "was done in a timely manner, with the exception of the twenty-one (21) days for which liquidated damages were awarded." The court further ruled that any future work authorized by the City to remedy or repair defective products or workmanship would be considered warranty work, which would not be covered by the March 9, 2006 judgment. Similarly, the trial court ruled that the City's claim to recover amounts it had yet to expend for warranty work constituted a separate action; however, the court reserved the City's right to pursue said warranty claims. Finally, noting an absence of evidence in the record that would support the reasonableness of the fees requested, the trial court denied Quality's request for attorney fees.
Quality filed a motion for a partial new trial seeking an opportunity to present evidence as to the total amount of legal fees that it incurred as well as the reasonableness of such fees. Quality further prayed that the trial court render judgment awarding a reasonable attorney fee. The City opposed the motion for a partial new trial on the ground that same was not timely filed.
On May 2, 2006, the trial court issued a judgment finding that while a Certificate of Substantial Completion had been recorded for the construction project at issue, the court could find no evidence of the City's formal, final acceptance of the work as required by La. R.S. 38:2191 for the recovery of attorney fees. For this reason, the trial court denied Quality's request for attorney fees. From this judgment, Quality has appealed.

ASSIGNMENTS OF ERROR
In connection with its appeal in this matter, Quality specified the following assignments of error for review and consideration by this court:
1. The trial court erred in denying Quality reasonable attorney fees based upon the City's failure to make timely payment pursuant to the Public Works Law;
2. The trial court erred in assessing liquidated damages when the project engineer was responsible for a lengthy delay in resolving the issue of brand name vs. "or equal" products;
3. The trial court erred in failing to find that Quality carried its burden of proving that the multiple change orders should have been approved; and
4. The trial court erred in failing to award legal interest on the sum awarded from the date of substantial completion, which is the date from which it was due and owing.

STANDARD OF REVIEW
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and *91 Development, 617 So.2d 880, 882, n. 2 (La. 1993). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

ANALYSIS AND DISCUSSION
Denial of Attorney Fees
The initial error assigned by Quality is that the trial court erred in denying it reasonable attorney fees based upon the City's failure to make timely payment pursuant to the provisions of the Public Works Law. In its brief to this court, Quality recognized the well-settled precept of Louisiana law which holds that attorney fees are generally not recoverable unless provided by statute or contract. Tassin v. Golden Rule Insurance Company, 94-0362, p. 14 (La.App. 1 Cir. 12/22/94), 649 So.2d 1050, 1058.
As support for its claim for attorney fees, Quality relied upon La. R.S. 38:2191(B), which states that "[a]ny public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorneys fees." Quality also argued in its brief that it:
has been forced to incur considerable legal fees in order to obtain a judgment awarding [Quality] the contract balance/retainage which has been owed to [Quality] for over two years and, in fact, has still not been paid. The [Trial] Court made no reference whatsoever to [Quality's] prayer for attorneys fees in the judgment rendered on March 9, 2006. . . . In response to [Quality's] request for written reasons for judgment, specifically as to the attorney fee issue, the Trial Court stated no attorneys fees were awarded because there was no evidence in the record that the requested fees were reasonable. . . . When the Court was reminded that there was an agreement, on the record, that the legal bills submitted by [Quality] were introduced into evidence and a subsequent hearing on reasonableness would be held if [Quality] prevailed, a second set of written reasons was sent out. The [Trial Courts] reasons for judgment provide, in it's [sic] entirety, as follows:
["]The trial in this matter was held on January 30, 2006. In addition to the Reasons for Judgment rendered by this Court on March 24, 2006, the Court makes the following findings of fact and law.
Although there was a Certificate of Substantial Completion recorded for the construction project at issue, there is no evidence in the record that there was ever a formal, final acceptance of the work by the City of Gonzales, as required by La. R.S. 38:2191 in order to recover attorney fees. Therefore, in accordance with Diamond B Constr. Co. v. City of Plaquemine, 673 So.2d 636 (La. App. 1 Cir. 4/30/96), and All Seasons Constr., Inc. v. City of Shreveport, 742 So.2d 626 (La.App. 2 Cir. 8/18/99), review or rehearing denied by 752 So.2d 168 (La.12/17/99), [Quality's] request for attorney fees is denied.["]
Quality further argued that the trial court's reliance upon Diamond B Construction Company, Inc. v. City of Plaquemine, 95-1979 (La.App. 1 Cir. 4/30/96), 673 So.2d 636, was misplaced as the factual scenario presented therein is distinguishable from the facts presented in *92 the case at bar. Quality asserted that although the City of Plaquemine was ordered to pay to the contractor the funds it had retained, the court did not award attorney fees presumably because the City of Plaquemine and its project engineer expressed differing opinions as to the quality of the finished work. Quality argued that the record in the instant case is devoid of evidence to indicate that the City disagreed that the facility was substantially complete as the City's mayor personally signed the Certificate of Substantial Completion. In addition, Quality argued that the "sprayground" facility has been open to the public and used as a children's playground since August 2004. Thus, Quality asserted that the argument that the facility had never been accepted as complete was untenable. Quality urged that the trial court's award of attorney fees be reversed and the matter remanded for a proper determination of the fees owed.
In response, the City argued that in correspondence dated September 30, 2005,[2] Quality acknowledged that the facility remained incomplete, and that this fact supported the City's decision to withhold formal, final acceptance.
Upon review of this matter, we note that La. R.S. 38:2241.1 provides as follows:
Whenever the public entity enters into a contract for the construction, alteration, or repair of any public works, in accordance with the provisions of R.S. 38:2241, the official representative of the public entity shall have recorded in the office of the recorder of mortgages, in the parish where the work has been done, an acceptance of said work or of any specified area thereof upon substantial completion of the work. . . . The recordation of an acceptance in accordance with the provisions of this Section upon substantial completion shall be effective as an acceptance for all purposes under this Chapter.
The record in this matter reflects that the City, through its authorized representative, the mayor, executed a certificate of substantial completion in accordance with La. R.S. 38:2241.1 on August 16, 2004, which was filed into the mortgage records of Ascension Parish on August 20, 2004.[3] Thus, said certificate of substantial completion was effective as an acceptance for all purposes, including a "formal final acceptance" of the work as required by La. R.S. 38:2191(B), thereby entitling Quality to an award of attorney fees.
It is further evident from the record that the City failed to tender final payment within 45 days following its receipt of a clear lien certificate and after what amounted to formal final acceptance. Based upon the mandatory provisions of La. R.S. 38:2191(B), the City is liable for the reasonable attorney fees incurred by Quality. Accordingly, the trial court's denial of reasonable attorney fees to Quality based upon the City's failure to make timely payment pursuant to the provisions of the Public Works Law is reversed. We hereby remand this matter to the trial court for a hearing and determination as to the appropriateness and reasonable nature of the attorney fees incurred by Quality.
Entitlement to Liquidated Damages
The second error assigned by Quality is that the trial court erred in assessing liquidated damages when the City's project engineer was responsible for a lengthy delay in resolving the issue of brand name vs. "equal" products. In its brief to this court, Quality alleged that the project engineer's *93 consideration of an equivalent product line that Quality proposed for use on the facility project delayed Quality from starting on the project for a period of time well in excess of the 14 days that the trial court assessed as liquidated damages. Quality argued that this delay (between the awarding of the contract in January 2004, and its subsequent receipt of a letter dated April 1, 2004, from Glen Shaheen, the project engineer for the City, advising that the alternate equipment proposed by Quality would not be accepted) prevented Quality from ordering the requisite equipment necessary to begin meaningful work on the project. Quality contended that this initial delay of approximately 90 days more than offset the 14 days that Quality was penalized in liquidated damages at the rate of $200.00 per day. Quality further contended the trial court's assessment of 14 days of liquidated damages against it at the rate of $200.00 per day constituted reversible error.
The City responded to this assertion with the argument that although Quality contested the trial court's assessment of liquidated damages, Quality offered no evidence challenging the validity of the liquidated damages provision of the construction contract that it entered into with the City. The City further pointed out that the evidence adduced at trial established that the initial deadline for substantial completion of the project was July 16, 2004, but that Quality did not substantially complete construction of the project until July 30, 2004. The City further asserts that pursuant to the explicit terms of the construction contract, Quality's failure to meet the substantial completion deadline subjected it to an assessment of liquidated damages and the trial court properly awarded the City $2,800.00, which the City claimed represents 14 days of delay at a rate of $200.00 per day, as prayed for in the City's reconventional demand.
Again, following our review of the record in this matter, we find no manifest error in the trial court's assessment of liquidated damages against Quality occasioned by its failure to meet the substantial completion deadline set forth in its contract with the City. Pursuant to its judgment signed on March 9, 2006, the trial court awarded the City $2,800.00 for liquidated damages; however, in written reasons for judgment signed on March 24, 2006, the trial court noted that the work performed by Quality with respect to the "sprayground" facility "was done in a timely manner, with the exception of the twenty-one (21) days for which liquidated damages were awarded."
In its brief to this court, the City also claimed that the trial court erred by failing to award an amount for the remaining seven days of delay that were attributed to Quality pursuant to the trial court's written reasons for judgment. In light of the trial court's finding that Quality was responsible for 21 days of delay, the City argued that the trial court failed to award an amount for the remaining seven days of delay. The City asserted that it should be awarded an additional $1,050.00 (representing seven days of delay damages at a rate of $150.00 per day for Quality's failure to meet the deadline for completion and readiness for final payment).
Upon our review of the record in this matter, we note that the City has neither taken a separate appeal from the trial court's judgment, nor has it answered the appeal filed by Quality. Inasmuch as the City failed to seek modification or revision of the trial court's judgment in this court, we are barred from consideration of this issue. La.Code Civ. P. art. 2133. Accordingly, we find this assignment to be without merit.
Failure to Approve Multiple Change Orders
The third error assigned by Quality is that the trial court erred in failing to *94 conclude that Quality carried its burden of proving that its numerous change order requests represented valid requests for additional contract time and additional funds necessary to address issues that arose and were not attributable to Quality. In its brief to this court, Quality pointed out that at the trial of this matter, it presented the testimony of its president, as well as its project manager. Quality asserted that these individuals were present on the jobsite and dealt directly with the problems giving rise to the change order requests. Quality also pointed out the only witness called by the City was its project engineer who, Quality claimed, testified as to his impression of the reasons for denying various change order requests based upon his review of file documents.
The City argued in response that the trial court reviewed the documentary evidence and testimony presented at trial, made determinations as to credibility, and reached its factual findings. The City argued that said findings must not be overturned absent a showing of manifest error.
We cannot say that the trial court manifestly erred in failing to make reference in its judgment to the City's denial of Quality's numerous change order requests. Accordingly, we also find this assignment to be without merit.
Failure to Award Legal Interest on Sum Awarded
The final error assigned by Quality is that the trial court erred in failing to award legal interest on the sum awarded from the date of substantial completion. In its brief to this court, Quality pointed out that while the trial court ruled in its favor with regard to the contract retainage, the judgment was silent with respect to the issue of legal interest on the amount awarded. Quality pointed out that as part of its original petition it had prayed that legal interest be awarded "from the date that such payment was due." Quality further cited and relied on La. Civ.Code art. 2000, which provides in pertinent part:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500. [Underscoring supplied].
The City responded with the argument that Quality offered no argument to support its contention that legal interest should be awarded from the date of substantial completion; and for this reason, Quality failed to meet its burden of proof and the trial court's judgment should not be disturbed. In the alternative, the City argued that as the trial court's award of $54,000.00 did not equal the $57,240.54 prayed for by Quality in its original petition, it must be presumed that the trial court made adjustments to the amount sought by Quality.
In a contractual situation, interest is recoverable from the time the debt becomes due unless otherwise stipulated. La. Civ.Code art.2000[4] (formerly La. Civ. Code art.1938); United States Fidelity & Guaranty Company v. Southern Excavation, Inc., 480 So.2d 920, 925 (La.App. 2 Cir.1985), writs denied. 481 So.2d 1337, 1339 (La.1986). The time the debt becomes due is the date of substantial completion. Ortego v. Dupont, 611 So.2d 792, 795-796 (La.App. 3 Cir.1992); American Druggists Insurance Company v. Henry Contracting, Inc., 505 So.2d 734, 740-41 *95 (La.App. 3 Cir.) writ denied, 511 So.2d 1156 (La.1987); United States Fidelity & Guaranty Company v. Southern Excavation, Inc., 480 So.2d at 925; National Roofing & Siding Co., Inc. v. Gros, 433 So.2d 403, 405-06 (La.App. 4 Cir. 1983).
Accordingly, we find that the trial court erred in failing to award legal interest on the sum awarded from the date of substantial completion of the contract.

CONCLUSION
For the above and foregoing reasons, the trial court's denial of reasonable attorney fees to Quality based upon the City's failure to make timely payment pursuant to the provisions of the Public Works Law is hereby reversed. Accordingly, we remand this matter to the trial court for a hearing and determination as to the appropriateness and reasonable nature of the attorney fees incurred by Quality. We further amend the trial court's judgment to include legal interest on its award of $54,000.00 to Quality from July 30, 2004, the date of the substantial completion of the contract. In all other respects, the judgment of the trial court is affirmed. Costs in the amount of $3,609.50 shall be assessed against defendant-appellee, City of Gonzales.
REVERSED IN PART AND REMANDED, AMENDED IN PART, AND AS AMENDED, AFFIRMED.
NOTES
[1] Retainage is a portion or percentage of payments due for the work completed on a contract that is held back until the entire job is completed satisfactorily.
[2] Quality's letter of September 30, 2005, was introduced as City's Exhibit #11.
[3] The Certificate of Substantial Completion was introduced as Quality's Exhibit # 4.
[4] As the comment to Article 2000 indicates, this article reproduces the substance of several former articles on the subject and eliminates others as unnecessary. It does not change the law with respect to the issue involved in this case.